UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES L. BLAYLOCK,

      Plaintiff,

v.

BECKY CARL, DYER, JACOBS,
S. SALINAS, and J. GARCIA,

      Defendants.

_____/

Case No. 2:22-cv-10831
Chief District Judge Sean F. Cox
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 33) AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 39)[1]

### I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff James

L. Blaylock (Blaylock), proceeding *pro se*, is suing Michigan Department of

Corrections (MDOC) defendants Warden Becky Carl (Carl), Assistant Deputy

Warden Andrew Dyer (Dyer), Captain Jason Garcia (Garcia), Lieutenant Sanpedro

Salinas (Salinas), and Assistant Resident Unit Supervisor Jon Jacobs (Jacobs),

---

[1] Upon review of the motions, the undersigned deems these matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

claiming that they violated his Eighth and Fourteenth Amendment rights while he was incarcerated at the St. Louis Correctional Facility (SLF) in Saint Louis, Michigan.  (ECF No. 12, Amended Complaint).[2]  All pretrial matters have been referred to the undersigned.  (ECF No. 16).

Before the Court are defendants' motion for summary judgment, (ECF No. 33), and Blaylock's motion for summary judgment, (ECF No. 39).  Both motions are fully briefed.  (ECF Nos. 35, 36, 37, 41, 45).  For the reasons that follow, the undersigned RECOMMENDS that defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART, and that Blaylock's motion for summary judgment be DENIED.  If these recommendations are adopted, the case would proceed on Blaylock's due process claim against Dyer and Carl.

## II.    Background

As set forth in the amended complaint, Blaylock alleges that his right to due process was violated when he was not given notice of two misconduct tickets issued by Jarray Adams (Adams) before the hearings on those tickets.  (ECF No. 12, PageID.38).  Both misconduct hearing reports, attached to the amended

---

[2] In his original complaint, Blaylock named Jarray Adams (Adams) as a defendant, but he did not include Adams as a defendant in the amended complaint.  Blaylock later sought to add Adams back to the complaint, (ECF No. 29), but his motion was denied, (ECF No. 31).  Out of caution, defendants address Blaylock's claim against Adams in their summary judgment motion, and the undersigned will consider those arguments, as it appears that Adams was inadvertently left out of the amended complaint.

complaint, show that the charges against Blaylock were dismissed because he was not provided due process. (*Id.*, PageID.50-53). Nevertheless, Blaylock was sent to segregation for eighty days following the hearings. (*Id.*, PageID.38). Blaylock says that Dyer and Jacobs made the decision to keep him in segregation for that length of time, and that he complained to Carl, who told him that no policies or procedures had been violated. (*Id.*).

He further alleges that Salinas and Garcia knew his due process was violated but nevertheless denied his grievances about being in segregation. (*Id.*). The grievance attached to the complaint shows that it was denied at Step I because Blaylock was legitimately placed on observation status due to threatening self-harm. (*Id.*, PageID.54). The grievance was denied at Step II by Carl and denied again at Step III by the grievance manager with the Office of Legal Affairs. (*Id.*, PageID.54-56).

Blaylock further says that his stay in segregation caused him to have mental breakdowns and that he was sent to the hospital "at least twice." (*Id.*, PageID.41). He says that Dyer and Jacobs knew of his mental health issues when they decided to keep him in segregation, and that Carl knew as well when she dismissed his requests to be released. (*Id.*). Additionally, he says that Salinas, the grievance investigator, and Garcia, the Step I grievance reviewer, wrongfully denied his grievance to be released from segregation. (*Id.*). For his injuries, Blaylock

contends that he suffered mental distress and trauma and had not received any treatment other than hospitalizations for self-harm while in segregation.

### III.    Legal Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion").  "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' "  *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Blaylock is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

### IV.    Parties' Arguments

#### A.    Defendants

Defendants state that while Blaylock did have two misconduct tickets dismissed for lack of due process, he was issued a total of four misconduct tickets on July 14, 2021, and was found guilty on the other two tickets.  (ECF No. 33, PageID.166).  In support, they attach an affidavit from Carl confirming these facts.  (ECF No. 33-2).  Attached to that affidavit are all four misconduct hearing reports, two of which show that Blaylock was found guilty of threatening behavior, (*id.*, PageID.190), and assault and battery, (*id.*, PageID.191).  Based on these findings, made by Hearing Officer O'Brien, Blaylock was sanctioned with a total of twenty days of detention and an additional thirty days of loss of privileges.  (*Id.*, PageID.190-191).

According to Carl, MDOC policy directives required Blaylock to be reclassified to segregation based on a guilty finding of assault and battery, which is a class I misconduct. (*Id.*, PageID.187). Under the same policy directive, Blaylock was subject to monthly segregation reviews on August 18, September 8, October 6, and November 3, 2021. (*Id.*). Following the November 3, 2021 review, Blaylock was reclassified from segregation back to the general prison population. (*Id.*). This is supported by the attached segregation behavior review forms. Those forms show that Blaylock was regularly appropriate in behavior and attitude with staff and other prisoners, but was held in segregation until November 3, 2021, based on the "seriousness of [the] misconduct," which involved punching an officer in the head and threatening violence to another officer. (*Id.*, PageID.216-219).

Defendants argue that as to Salinas and Garcia, Blaylock cannot demonstrate personal involvement, warranting their dismissal. As to Adams, defendants argue that Blaylock did not suffer a violation of his Fourteenth Amendment due process rights because his due process came in the form of misconduct hearings on each of his tickets. And as to all defendants, they argue that his transfer to segregation for eighty days was *de minimis* and supported by monthly reviews, such that there is no Eighth or Fourteenth Amendment violation.

B.    Blaylock

6

Blaylock argues that the handling of his misconduct tickets and hearings violated MDOC policy directives and his Fourteenth Amendment procedural due process rights.  Adams violated Blaylock's due process rights by not providing him with a copy of the misconduct tickets before his hearings.  According to Blaylock, a copy of the ticket must be provided to the inmate and reviewed with the inmate by the officer, in this case Adams.  He raised this issue at his hearings, resulting in two of the misconducts being dismissed, but the other two were upheld by Hearing Officer O'Brien, who found that the tickets were read to Blaylock and that this satisfied the due process concerns.

Regarding Salinas and Garcia, Blaylock argues that they became aware of his mental condition and the suicide risk of keeping him in segregation through his grievances.  Their failure to resolve his grievances by releasing him from segregation thus renders them culpable for violating his Eighth Amendment right to be free from cruel and unusual punishment.  As to Carl, Blaylock argues that her conduct was even more egregious and blatant.  He notes her involvement in the denial of his grievances at Step II, her imputed knowledge of his mental condition and suicide risk, and her "failure to act" to have him released from segregation. (ECF No. 39, PageID.268).

Lastly, Blaylock argues that Dyer and Jacobs knew of his condition and the due process violations against him and yet wrongly kept him in segregation after

monthly reviews until November 3, 2021.  Blaylock goes on to argue that none of
the defendants should be entitled to qualified immunity, as it is clearly established
law that keeping mentally ill inmates in segregation for long periods of time
constitutes cruel and unusual punishment.

V.    Defendants' Summary Judgment Motion

A.    Grievance Denials

Blaylock's claims against Salinas and Garcia, and some of his claims against
Carl, stem from their denial of his grievances for being wrongly placed and held in
segregation for eighty days.  These claims are not actionable under Sixth Circuit
precedent.

"The 'denial of administrative grievances or the failure to act' by prison
officials does not subject supervisors to liability under § 1983."  *Grinter v. Knight*,
532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300
(6th Cir. 1999)); *see also Israfil v. Parks*, No. 2:10–cv–132, 2011 WL 2491516, at
*2 (S.D. Ohio May 2, 2011) ("Participation in the processing of administrative
remedies does not expose a corrections employee to a claim that she acquiesced in
the conduct complained of[,]"), *report and recommendation adopted*, 2011 WL
2491574 (S.D. Ohio June 22, 2011); *Manley v. Smith*, No. 1:11–cv–163, 2012 WL
967569, at *4 (W.D. Mich. Feb. 14, 2012) (recommending granting registered
nurse's motion for summary judgment "whose only role involved the denial of an

8

administrative grievance" even though "plaintiff contend[ed] that [the nurse] delayed [his] access to medical care when [she] denied the grievance"), *report and recommendation adopted*, 2012 WL 967099 (W.D. Mich. 21, 2012). Therefore, summary judgment should be granted to Salinas and Garcia and to Carl to the extent that Carl denied Blaylock's grievances on appeal.

### B.    Claim Against Adams

Blaylock alleges that Adams failed to follow MDOC policy when he did not provide Blaylock with a proper review of his misconduct tickets. This led to two of the tickets being wrongly upheld over Blaylock's due process objections.

To make out a §1983 claim for violation of procedural due process, Blaylock must "establish that state post-conviction remedies are inadequate." *Petersen v. Garrett*, No. 04-60196, 2006 WL 4046224, at *3 (E.D. Mich. Aug. 3, 2006), *aff'd sub nom. Petersen v. Garett*, 2007 WL 465732 (E.D. Mich. Feb. 6, 2007) (citing *Hudson v. Palmer,* 468 U.S. 512 (1984)). The fact that Adams may have violated MDOC policy guidelines for due process does not render his actions constitutional violations. *See Laney v. Farley*, 501 F.3d 577, 580 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (holding that a failure to follow policy directive does not rise to the level of

9

a constitutional violation because policy directive did not create a protectible liberty interest).

In *Parratt v. Taylor*, 451 U.S. 527 (1981), the Supreme Court held that there is no violation of the Due Process Clause of the Fourteenth Amendment where the complaint alleges a "random, unauthorized act, for which the State provided an adequate remedy[,]" rather than an "established state procedure[.]" *Washington v. Randall-Owens*, No. CIV. 06-12588, 2007 WL 2713749, at *7 (E.D. Mich. Sept. 17, 2007). Here, Blaylock has alleged that a violation of MDOC policy, not the policy itself, is the cause of his deprivation. The question is then whether there was an adequate remedy.

Blaylock does not argue that the procedures for inmates to appeal the results of misconduct hearings, governed by M.C.L. §§ 791.251-791.255, are inadequate. Nevertheless, the sufficiency of these procedures was discussed and affirmed in *Branham v. Spurgis*, 720 F. Supp. 605, 608 (W.D. Mich. 1989):

> Michigan law provides effective remedies for review of prisoners' misconduct convictions and vindication of their right to due process in the disciplinary proceedings. Michigan statutory law, Mich. Comp. Laws § 791.254, provides for rehearing of prison disciplinary decisions on the ground, among others, that "the prisoner's due process rights were violated." *Id.* at § 791.254(2)(c). If a request for rehearing is ultimately unsuccessful, plaintiff has a right to judicial review in the state circuit court. Mich. Comp. Laws § 791.255. The circuit court has plenary powers to reverse the hearing decision on due-process grounds. *Id.* at § 791.255(4), (5); *see Khan v. Warden, Jackson Prison*, 128 Mich.App. 224 (1983). In a very real sense, the misconduct hearing is only the first step of a statutory scheme carefully designed to assure fair

disciplinary procedures.

> The Michigan statutory review procedure goes far beyond the requirements of due process. Due process requires only that the state provide minimal notice and opportunity to be heard, *see Wolff v. McDonnell*, 418 U.S. 539 (1974), and that the decision be supported by "some evidence." *Superintendent, Mass. Corr. Fac. v. Hill*, 472 U.S. 445, 455 (1985). The Michigan courts, in contrast, will reverse misconduct convictions not only for violations of minimal due-process guaranties, but also for prejudicial violations of the more extensive requirements of state procedural law. Mich. Comp. Laws § 791.254(2)(b). Likewise, the Michigan courts require that the conviction be supported by "competent, material and substantial evidence on the whole record," *id.* at § 791.255(5), not merely by "some evidence." A prisoner's appeal to state circuit court, then, is more than adequate to vindicate federal rights. The Sixth Circuit has squarely held that such an appeal of administrative decisions to the state circuit court provides an adequate remedy for administrative violations of procedural due process for purposes of *Parratt v. Taylor*. *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461, 468 (6th Cir. 1988).

As affirmed by the Sixth Circuit in *Sewell*, the procedural remedies available to Blaylock in Michigan go beyond what is constitutionally required. Therefore, if Adams is considered a party to this case, he should be granted judgment on Blaylock's claims for improper review of his misconduct tickets.

C.     Claims Involving Continued Administrative Segregation

In his original complaint, Blaylock alleged that his stay in segregation was wrongfully extended from the twenty days of his sanction to over eighty days. (ECF No. 1, PageID.3). Screening the complaint, the district court found that while this could be the basis for a due process claim, Blaylock had failed to allege who was responsible for the excessive time in segregation. *Blaylock v. Adams*, No.

11

2:22-CV-10831, 2022 WL 2079865, at *4 (E.D. Mich. June 9, 2022) (*Blaylock I*).

Thus, those claims were dismissed, but "without prejudice to [Blaylock] filing a complaint properly naming defendant(s) responsible for the unexplained eighty-day extension to his time in administrative segregation." *Id.* Blaylock then filed an amended complaint, naming Dyer, Jacobs, and Carl as the parties responsible for his monthly segregation reviews. (ECF No. 12).

### 1.    Legal Standard

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a prisoner's loss of liberty implicates a federally cognizable liberty interest protected by the Due Process Clause. Courts must evaluate whether segregation constitutes " 'an atypical and significant' hardship on the inmate in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin*, 515 U.S. at 483); *see also Powell v. Washington*, 720 F. App'x 222, 226 (6th Cir. 2017). In general, courts evaluate "the nature and duration of a stay in segregation" to determine whether it meets the "atypical and significant" standard. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (citing *Harden–Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008)).

### 2.    Analysis

#### a.    Liberty Interest

Regarding the duration of Blaylock's stay, defendants argue that his eighty

12

days in segregation was not atypical or significant.  They note that the Sixth Circuit has upheld much longer stays in segregation without finding a prisoner's due process rights to be invoked.  *See Baker*, 155 F.3d at 812-13 (a two-and-a-half-year confinement in administrative segregation was not atypical and significant while inmate was investigated for murder of a prison guard); *Mackey v. Dyke*, 111 F.3d 460, 461 (6th Cir. 1997) (over one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding, was upheld); *Bradley v. Evans*, 229 F.3d 1150 (6th Cir. 2000) (unpublished table decision) (stay of fourteen months in administrative segregation after thirteen separate segregation reviews did not violate inmate's due process).

More recently, however, the Sixth Circuit recognized that segregation more severely affects inmates with existing mental illness and cautions that assessments of solitary confinement should consider the mental health of the individual, "recognizing the 'growing consensus' that solitary confinement 'can cause severe and traumatic psychological damage . . .' " *J.H. v. Williamson Cty., Tenn.*, 951 F.3d 709, 719 (6th Cir. 2020) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017)) *cert. denied sub nom. J. H. v. Williamson Cty., TN*, No. 20-353, 2020 WL 6701106 (U.S. Nov. 16, 2020).  The Sixth Circuit noted further that "not a single study of solitary confinement wherein non-voluntary confinement that lasted

for longer than 10 days failed to result in negative psychological effects." *Id.*
(quoting *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 566 (3d Cir. 2017)).

As the district court noted in screening the complaint, the complaint
"establishe[d] the existence of potential mental health issues, where [Blaylock] was
restrained and placed on observation status because he threatened to harm
himself." *Blaylock I*, 2022 WL 2079865, at *4.  Neither Dyer nor Jacobs has
submitted an affidavit disputing Blaylock's alleged mental issues or disclaiming
knowledge of them.  Carl's affidavit failed to address these issues or give a reason
for Blaylock's continued stay in segregation beyond his initial sanction.  (ECF No.
33-2).

Defendants attempt to distinguish *J.H.* by arguing that Blaylock is an adult
with "no known mental illnesses" whereas the plaintiff in *J.H.* was a 14-year-old
minor with known mental illness.  (ECF No. 36, PageID.252).  The undersigned
agrees that while certain facts may differ, *J.H.* is instructive on whether
segregation of an inmate with mental health issues can reach the level of an
atypical and significant hardship.

Furthermore, the Sixth Circuit cases cited by defendants are also
distinguishable.  In *Baker*, the court found that "[t]he 'atypical' length of plaintiff's
stay in administrative segregation [was] with good reason," due to the ongoing
investigation that ultimately revealed the plaintiff had murdered a prison guard

during a riot.  155 F.3d at 812-13.  *Baker*, "like all decisions, stands for no more and no less than what was necessary to resolve the case—that the State's explanation for holding the inmate in administrative segregation for two and a half years sufficed as a matter of law to establish that no due process violation occurred."  *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

Similarly, in *Mackey*, the delay in transferring the plaintiff out of segregation after the duration of his assignment was "understandable given the corrections system's need to find him a bed at a suitable security level institution in an overcrowded prison system, with many prisoners needing the same type of transfer."  111 F.3d at 463.  The court stated: "To rule in [the plaintiff's] favor would run counter to the view expressed in several Supreme Court cases that 'federal courts ought to afford appropriate deference and flexibility to state [prison] officials trying to manage a volatile environment.' "  *Id.* (quoting *Sandin*, 515 U.S. at 482).

Here, defendants have not shown that Blaylock's continued stay in segregation affected the overall prison environment, as was shown in *Mackey* to justify the plaintiff's extended stay in segregation.  Defendants have not provided any evidence, via affidavit or otherwise, to justify the extension of segregation at all, or to dispute Blaylock's contention that he is mentally ill and suffered serious consequences from spending eighty days in segregation.

Based on Sixth Circuit precedent, and under the record as it stands, there is a genuine issue of material fact whether Blaylock's stay in segregation violated a liberty interest, such that he must be afforded due process.  Whether the record shows that Blaylock was given due process as a matter of law is addressed below.

b.      Due Process

*Baker*, *Mackey*, and *J.H.* make clear that a prisoner's stay in segregation cannot be analyzed outside of its context.  Here, the context is that Blaylock was sanctioned with twenty consecutive days in segregation and then remained in segregation for approximately two months afterwards based on segregation behavior reviews signed by Dyer and Jacobs.  (ECF No. 33-2, PageID.216-219).  Defendants argue that Blaylock's segregation reviews satisfy due process for his stay in segregation beyond the twenty-day sanction.

In *Hewitt v. Helms*, the Supreme Court held that "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates."  459 U.S. 460, 477 n.9 (1983), *abrogated on other grounds by Sandin,* 515 U.S. at 484.  "This review will not necessarily require that prison officials permit the submission of any additional evidence or statements."  *Id.*  The decision to keep an inmate in segregation is unsuited for "proof," but relates to whether the inmate remains a security risk, based on particularized facts relating to the particular inmate as well as the officials' knowledge of prison conditions and tensions.  *Id.*  Applying this

16

holding, the Sixth Circuit stated that "the decision to continue confinement must be supported by 'some evidence.' " *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). "This requirement balances the procedural rights of prisoner against the need of prison officials to have freedom to operate their facilities on a day-to-day basis." *Id.* "Under this law, [a plaintiff is] entitled to a periodic review of his confinement, *supported by some evidence or indicia of reliability*." *Id.* (emphasis added).

To satisfy this requirement, MDOC Policy Directive 04.05.120 ¶ FFF directs that housing unit team members and the security classification committee "shall regularly review the behavioral adjustment of each prisoner classified to administrative segregation, including prisoners classified to administrative segregation who are serving a detention sanction for misconduct." (ECF No. 33-2, PageID.209). An inmate in administrative segregation is subject to review at least every thirty days until he is reclassified to the general population. (*Id.*).

There is no question that this directive was satisfied. Dyer, Jacobs, and Carl signed Blaylock's segregation behavior reviews within the required timeframes until Blaylock was released to general population. The question is whether Blaylock's reviews were "supported by some evidence or indicia of reliability." *Id.*

Blaylock's initial review was conducted on August 18, 2021, within the

twenty days of his segregation sanction.  (*Id.*, PageID.219).  His next review was

September 8, 2021, approximately a week beyond his twenty-day sanction.  (*Id.*,

PageID.218).  The housing unit team evaluation shows that Blaylock regularly had

appropriate behavior and attitude with prisoners and staff and adequate

housekeeping and personal hygiene at all times.  (*Id.*).  This assessment was signed

by Jacobs.  (*Id.*).  The security classification committee interviewed Blaylock and

recommended to continue segregation based on "serious misconducts" and this

recommendation was signed by Dyer on September 9, 2021.  (*Id.*).  It stated that

Blaylock's "[p]otential to honor the trust implicit in less restrictive confinement"

was "low," but did not provide a reason for the assessment.  (*Id.*).  Carl approved

the recommendation to keep Blaylock in segregation on September 13, 2021.  (*Id.*).

Blaylock's next review, on October 6, 2021, had the same housing unit team

evaluation, which was again signed by Jacobs.  (*Id.*, PageID.217).  The security

classification committee findings were the same as well, with a recommendation to

continue segregation due to "seriousness of misconduct."  (*Id.*).  This was again

signed by Dyer and approved by Carl.  (*Id.*).  Blaylock's final review, on

November 3, 2021, was similar, except that his "[p]otential to honor the trust

implicit in less restrictive confinement" was low to moderate, and his

reclassification to general population was recommended.  (*Id.*, PageID.216).

Based on the interim reviews between Blaylock's twenty-day sanction

18

expiring and his eventual release from segregation approximately two months later, there is a genuine issue of fact regarding due process.  Due process does not require that the decision to keep Blaylock in segregation beyond his sanction be supported by proof, or that a hearing be conducted at each review, under *Hewitt v. Helms*.  However, under *Harris v. Caruso* and *Superintendent v. Hill*, there must be some evidence or indicia of reliability to continue Blaylock's stay in segregation.  Here, it cannot be said as a matter of law that the record contains such evidence or indicia of reliability.

On September 9, 2021, when the security classification committee interviewed Blaylock, he said, "I was going to the hole when someone lied.  I had an issue w/ the yard closing early."  Perhaps based on this, perhaps not, his potential to honor the trust implicit in a less restrictive environment was found to be low.  (*Id.*, PageID.218).  Blaylock was interviewed next on October 8, 2021, stating only that "my due process was violated."  (*Id.*, PageID.217).  Most concerning, the reasons given for his continued segregation on both reviews were related to the seriousness of his misconduct, not his current security risk, or an ongoing investigation as in *Baker*, or an administrative reason such as overcrowded cells like in *Mackey*.

Under the Michigan Administrative Code, a security classification outside of a sanction for misconduct may be based on the following:

(a) The prisoner's need for protection.

(b) The safety of others.

(c) The protection of the general public.

(d) Prevention of escape.

(e) Maintenance of control and order.

(f) Medical and mental health care needs of the prisoner.

Mich. Admin. Code R 791.4401(1).

Similarly, under MDOC Policy Directive 04.05.120 ¶ Q,

[a] prisoner may be classified to administrative segregation only for the following reasons:

1. The prisoner demonstrates an inability to be managed with general population privileges.

2. The prisoner is a serious threat to the physical safety of staff or other prisoners or to the good order of the facility.

3. The prisoner is a serious escape risk.

4. The prisoner is under investigation by an outside authority for suspected felonious behavior and it is reasonably believed that the prisoner needs to be segregated while the investigation is pending. If classified to administrative segregation for this reason, the prisoner shall be reclassified when it is no longer believed that the prisoner needs to be segregated due to the pending investigation or the investigation is completed, whichever comes first.

5. The prisoner refuses required medical screening, testing, or treatment for a communicable disease and requires medical quarantine pursuant to PD 03.04.110 "Control of Communicable Diseases."

6. The prisoner tests positive for HIV infection and is subsequently

20

> found guilty of a misconduct for behavior that presents a significant
> risk of transmitting HIV infection, as set forth in PD 03.04.120 "Control
> of Communicable Bloodborne Diseases." The prisoner shall not be
> reclassified without prior authorization of the CFA Deputy Director in
> consultation with the Assistant Chief Medical Officer. The prisoner
> may be placed in a health care inpatient unit if necessary to receive
> medical care, including mental health care.

(*Id.*, PageID.202).

Based on the segregation behavior review forms, it does not appear that Jacobs was involved in the decision that Blaylock remain in segregation beyond his twenty-day sanction for misconduct. Dyer signed the security classification committee section in which Blaylock's continued segregation was recommended on both occasions, and Carl approved this recommendation both times. The stated reason for segregation does not fall under those listed in the MDOC Policy Directive or in the Michigan Administrative Code. Most importantly, extending Blaylock's segregation based on the seriousness of his initial misconducts, under which he had already been sanctioned to twenty days in segregation, does not find support in Sixth Circuit case law. Therefore, summary judgment should be granted as to Jacobs because of his lack of involvement. However, summary judgment should be denied as to Dyer and Carl because there is a genuine issue of material fact as to whether Blaylock's stay in administrative segregation was justified or if his due process was violated.

### D.   Qualified Immunity

1.      Standard

Qualified immunity shields government officials performing discretionary

functions "from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Created to

protect government officials from interference with their official duties, qualified

immunity "is an immunity from suit rather than a mere defense to liability."

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  It gives officials "breathing room

to make reasonable but mistaken judgments and protects all but the plainly

incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3,

6 (2013) (punctuation modified).  After a defending official initially raises

qualified immunity, the plaintiff bears the burden of showing that the official is not

entitled to qualified immunity. *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir.

2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the

facts in the light most favorable to the plaintiff, [it] determine[s] whether the

allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the

right was clearly established at the time of the incident." *Id.*  The steps may be

considered in either order, so "[i]f the court concludes that no constitutional

violation has occurred, there is no need to address whether the alleged right was

22

clearly established." *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

### 2. Application

As explained above, Blaylock has not shown a constitutional violation against Adams, Salinas, Garcia, or Jacobs. He has also not shown a constitutional violation against Carl for her role in denying his grievances. Given this, the undersigned need not address whether any clearly established right was violated as to these claims. *Kinlin*, 749 F.3d at 577. Defendants are entitled to qualified immunity for these claims.

On the remaining claims against Dyer and Carl for causing Blaylock to remain in segregation beyond his twenty-day sanction, defendants only argue that there is no constitutional violation, which therefore entitles them to qualified immunity. The undersigned recommends that this argument be rejected. Defendants have thus waived the argument that Blaylock's due process rights were not clearly established at the time of the incident. *See Frazier v. Comm'r of Soc. Sec.*, No. 19-cv-11097, 2020 WL 1856202, at *10 (E.D. Mich. Mar. 11, 2020) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."), *adopted sub nom. Frazier v. Saul*, 2020 WL 1847923 (E.D. Mich. Apr. 13, 2020).

Nevertheless, as noted above, the Sixth Circuit has made clear that being detained in administrative segregation can constitute an atypical and significant hardship that invokes one's liberty interest, guarded by due process. *Harden-Bey*, 524 F.3d at 792.  And as also explained above, even a twenty-one day stay in segregation can implicate an inmate's due process rights, depending on the attributes of the inmate and the duration and nature of the confinement.  *J.H.*, 951 F.3d at 719.  Therefore, the undersigned recommends denying qualified immunity on these claims.

### VI.   Blaylock's Summary Judgment Motion

Lastly, the undersigned must consider Blaylock's motion for summary judgment on his claims.  As explained above, he cannot succeed against Salinas, Garcia, or Carl on his claims that his grievances were wrongly denied.  Nor can he succeed against Adams for his due process claim, as Michigan law provided more than enough due process for his misconduct tickets and hearings, despite Adams' failure to review the tickets with him prior to the hearings.  The only remaining question is whether Blaylock should be granted summary judgment on his claims against Dyer and Carl for keeping him detained in segregation beyond the term of his misconduct sanction.

Based on the analysis above, there is a genuine issue of material fact whether given Blaylock's condition, his continued segregation constituted an

atypical and significant hardship, and whether he was afforded due process during his segregation reviews.  In support of his argument that the issue is beyond dispute, Blaylock attached a number of exhibits to his motion, including a mental health evaluation from March 2, 2009, showing findings of psychosis with a history of schizophrenia.  (ECF No. 39, PageID.283-284).  The rest of Blaylock's exhibits are duplicative of those attached to defendants' summary judgment motion and considered above.

"The moving party's initial burden [on a motion for summary judgment] differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought."  *Rouse v. Caruso*, No. CIV 06-10961, 2007 WL 909724, at *3 (E.D. Mich. Mar. 23, 2007).  "[W]here the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense."  *Id.* (internal quotation marks and citation omitted).  To succeed on his motion for summary judgment, Blaylock must essentially meet the very high burden of showing that he would be entitled to a directed verdict at trial.  *Id.*  In other words, Blaylock must "demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim."  *United States v. Feldman*, 439 F. Supp. 3d 946, 951 (E.D. Mich. 2020).

25

While Blaylock has successfully shown that there is a triable issue in this matter, as explained above, he has not demonstrated that a jury could not find in defendants' favor.  Therefore, the undersigned recommends that Blaylock's summary judgment motion be denied.

VII.   Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motion for summary judgment, (ECF No. 33), be GRANTED IN PART and DENIED IN PART, and that Blaylock's motion for summary judgment, (ECF No. 39), be DENIED.  If these recommendations are adopted, the case would proceed on Blaylock's due process claim against Dyer and Carl.

Dated: November 29, 2023                    s/Kimberly G. Altman____
Detroit, Michigan                                  KIMBERLY G. ALTMAN
                                                          United States Magistrate Judge

**<u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 30, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager
